Good morning, your honors. You may please the court. This case tests and exceeds the very outermost limits of what a person may be insured against under Nebraska law. In 2006, Commander David Kofed of the Douglas County CSI Unit committed the reprehensible act of planting false blood evidence against two innocent men in a murder investigation. For this criminal misconduct, he was both convicted of a Class IV felony, and it resulted in the civil judgments that are underlying this proceeding. In this appeal, the plaintiffs are arguing on his behalf, on Commander Kofed's behalf, that he has insurance coverage for the damages arising out of his wrongdoing, even for the punitive damages that were awarded against him. That's incorrect under Nebraska law, because Nebraska has actually affirmatively forbids its political subdivisions, like Douglas County, his employer, from paying civil judgments that arise out of criminal wrongdoing, whether they do it through insurance or otherwise. And they also have a public policy against paying for... You're referring to the statute 1801 now? That's exactly right. Section 13-1801. Now, you say it affirmatively forbids. It's an awkward way to phrase an affirmative prohibition. It says the section should not be construed to permit a subdivision to pay. Yes, that's exactly... It sort of leaves open the question whether that authority already existed. Yeah, and... What's the underlying authority of a municipality under Nebraska law to pay a judgment? Was this statute necessary to give a municipality authority to pay a judgment based on negligent error or omission, or was that authority already available? It was necessary because Nebraska law provides that the authority of a political subdivision is only that which is specifically granted to them. This statute was passed in 1972 to allow them to pay for... To provide a defense and to pay for judgments arising out of negligence. The testimony in support of it, which we cite in our yellow brief, made it very clear and showed that there's a problem because the individuals for the counties and sub-officials were being held liable for negligence, damages arising out of negligence, and were being made to pay it personally, and that's why they enacted this. Where would I look to find the authority that says the municipalities only have authority that's granted to them expressly? Your Honor, I know that's in the cases that we've cited dealing with the authority of the subdivisions here. I don't have the citation on the top of my head. We found one case that says they have the powers granted expressly and those necessarily or fairly implied by the ones granted expressly and those essential to the declared objects and purposes of the corporation. That's the Professional Firefighters of Omaha case. Yeah, I think... You think it's narrower than that? I think that's consistent with my understanding of where their authority comes from. I thought you were just talking about the first of the three, those granted expressly. And maybe since I don't have that in front of me, I can't tell. I thought the last two that you said were connected to each other. They're related, but they're not just express grants. There's necessarily fairly implied or incident to the powers expressly granted. So I wondered whether if they have the power to hire law enforcement officers that it's... So here's the authority incident to that power is the authority to pay judgments based on the negligent acts of the employees. Well, it certainly was not the understanding of the legislature and it was not the practice of the courts before this was passed in 1972 to allow it. That's why this was passed. And as we said, that was exceptionally clear and undisputed. And in terms of powers incident to, when we have this statute that so clearly says there is the power... There's in fact the duty to provide a defense for negligence and a duty to pay for judgments. But they amended it the next year in 1973 specifically to add this last sentence saying they may not... You may not construe this to give them to the authority to pay for civil judgments arising out of criminal acts. Well, all of COFED's acts weren't criminal, were they? It is. The allegation of the plaintiffs in this case is that he was charged with conspiracy, that some of the actions of the alleged co-conspirators were not criminal, and that therefore the judgments against him could be attributed to the non-criminal rather than the criminal acts. That's what I understand the argument on the other side to be. And if that's true, wouldn't a prohibition against insurance for criminal acts not apply? No, I think not. Because going back, this is the procedural posture in this case, even though these are the ultimate victims are here. They're arguing on behalf of David COFED. Under Nebraska law in a garnishment proceeding like this, this is a coverage proceeding. He had the duty to prove that the judgments that he was being legally required to pay damages because of things that were covered rather than legally required to pay because of the criminal misconduct. That's the difference between a duty to defend case and a duty to indemnify case. Do you think the judge should have done a causation analysis to figure out which portion of the damages were caused by, were the result of illegal acts and which portion were, as Judge Smith says, maybe not illegal? I think David COFED had an obligation to prove that up. If he was going to get coverage for something that wasn't forbidden by public policy, he had to prove that there was a distinct injury. The real problem here, of course, is that there weren't distinct injuries. There was one injury. Why don't we do a causation? How much of that was a result of the fabrication and how much was a result of the coerced confessions or the other things? In this sort of situation where it's an indemnify and where they're so intertwined, his illegal conduct is at the center of everything. Regardless of whether you say it's a conspiracy or extends further, his overt act was his criminal misconduct under this. What the courts have said, and we cited these cases in the coverage context, and again in our reply brief, one is the Rizzo case and the other, they're from circuits, not here. We couldn't find one directly on point here. But they say when they're so intertwined and the burden is on the insured to prove that now when there is intentional wrongdoing, that it's intertwined with other things, it's his duty to prove that he had done something that was insurable. In this case, he didn't meet it. What's your best case on that intertwined concept? You say Rizzo? There's the Rizzo case. It's coming out of the Ninth Circuit. And there's another one whose name I forget. They're both cited in our yellow brief on this. But this is the problem because of the procedural posture here. The judgments were underlying civil judgments were awarded against COFED because he defaulted there. And then he came here and he's standing in the shoes proceeding against us. And what the plaintiffs have argued and what the district courts seem to assume is that COFED's default in the underlying judgments would prejudice St. Paul in the garnishment proceedings. But under the Nebraska cases that we cited, R.W. versus Shrine holds this directly. The Torreson case holds this directly. When there's no duty to defend by the insurer, as it's conceded there wasn't here, whether the insured defaults and therefore gets judgments against him that maybe were supported, maybe not, that doesn't prejudice the insurer here. It's possible for the insured, COFED, to lose both on the default judgment against his victims and also to lose on coverage, which is coming here because he doesn't actually prove up that he's covered. Because otherwise what happened, and this is the setups there, is that the default underlying default case, the complaint, could be so broad that it isn't actually supported. But it's binding against him. Let's be clear. Nothing that happens here is going to relieve David COFED of any of the obligations he has to these plaintiffs. It's not going to change his criminal conviction. Those are set. But here in this separate proceeding, where he has to prove up his coverage against St. Paul, he actually has to go through that, and we are not bound by what he defaulted against there. Otherwise you could have scenarios, and this is actually the Torreson case, there's a setup where they stipulated to a consent judgment and said it was negligent when it wasn't and then tried to bind the carrier after the fact. You can't do that. What's undisputed here, because COFED was convicted of this in Nebraska Supreme Court, is that he acted absolutely within the scope of this exclusion that is in our policy and that matches Nebraska law on this point. He acted criminally. He acted dishonestly. He acted maliciously and fraudulently. But what about the expressed language in your policy that says it covers malicious prosecution? Yes. If the judgment against him were because of malicious prosecution, if he were ordered to pay because of that and it was supported, then we agree that that would be covered by the language of the policy. And then the court would be faced with the hard question of does the statute override the policy on that. Our view on this, as we said, is that he was not convicted for malicious prosecution and his civil judgment is not. Well, that's because malicious prosecution is usually in the crime. The crime would be evidence tampering, which he was convicted of. The civil corollary to it would be malicious prosecution. No, that's incorrect, Your Honor. The civil corollary is malicious prosecution. Nebraska has a tort for malicious prosecution. It was not pleaded against David COFED or any of these defendants. But do you think the policy means that the claim must be pleaded as malicious prosecution or is that phrase used in a non-legal, I mean, not non-legal, but is it possible to say, well, the acts that he did amount to malicious prosecution, even if it wasn't sued, if he wasn't sued that way? If we were in a duty to defend context, the fact that there are allegations that could speak to malicious prosecution would be controlling and would cover the duty to defend. Here, we're at the indemnification stage. And what the policy is based on here is what he is legally required to pay. And the question is, was he legally required to pay damages because of malicious prosecution? The answer is no. That wasn't part of any of the claims that were brought, even though there is a tort claim for that. It's not as a matter of law in this circuit, a claim that can be brought as a constitutional claim under Section 1983. And that was the only claims that were in these civil complaints. So our view is that he was legally required to pay damages for civil rights violations arising out of his criminal conduct. Those are covered by the exclusion. What about the, again, going back to the claims that were pleaded in the civil complaints that didn't allege criminal conduct? Would they be excluded because they alleged dishonest, fraudulent, or malicious acts? Yes. And the district judge agreed with that, by the way. The district judge, in the opinion, it's page 34 of the addendum, said if it weren't for the malicious prosecution carve out. Yeah, I know that's what he said. I would find, but. Explored independently. Yes. And so I think what it is in this coverage part of the suit, the court looks to that and said, no, in fact, all of those actions underlying everything that was pleaded against David Kofed were based on his criminal, dishonest, fraudulent, and malicious acts. Which one of those four things applies to the conspiracy claim? Well, because conspiracy standing alone doesn't get you there, it's a conspiracy to do something. Right. The thing that he has conspired to have done is to knowingly falsify the evidence. Well, they also alleged that he conspired to, well, he failed to intervene, was alleged. And he didn't disclose the fact that there had been coarse confessions, right? Yes. These were pleaded. Yes. So were those criminal, dishonest, fraudulent, or malicious acts? I think all of those were dishonest and given because the argument, the claim would be he knew of things that were otherwise than what they were conveying to the prosecutor and they didn't disclose them. I think that's dishonest. In addition, because of his intentional conduct here with malice to falsify the evidence, I don't think that you can say that, no, he intended to falsify evidence in one part, but his intent didn't cover over to all the other parts of what were alleged to be part of the same design and course of conduct. This goes back to the Rizzo case. Therefore, everything was done maliciously. Is that your point? Yes. Yes. It was done maliciously, but it was not, it didn't amount to a malicious prosecution because it wasn't pleaded that way. It wasn't pleaded that way. Under the elements, it's more than just pleading because in Nebraska law, the elements of malicious prosecution require you to have commenced it. It's clear. You look at the timeline here. These charges were filed on April 26th. He went back and swabbed the car on April 27th, but didn't tell anybody. The first time he told anybody is he filed these false reports on May 8th. The first time the blood evidence actually came back connected to the murder victims was June 29th. By then, he was already giving interviews to the paper saying, I may have contaminated it because the real perpetrators had already been found. So that's there. But to come back to this, we have overlapping arguments here. But the fundamental thing is the strong public policy in Nebraska that has an unusually strong thing from the legislature directly in this situation that says what you can do for public officials. And it makes it very clear that they do not want Douglas County, which is the one that bought this insurance policy, to pay for civil judgments arising out of illegal acts, which is what this is. What happened to liberty to contract in Nebraska? There's also that. But the point of public policy in this regard is that it would override that. Otherwise, it makes no difference. You can say public policy, but it would have no operative force if in some place it didn't actually override that. The RW Shrine case that we cite specifically said there that the policy against insuring against intentional wrongdoing overrides the policy in favor of compensating victims on that. There hasn't been a case in Nebraska where they've been forced to apply the public policy against intentional wrongdoing against a contract that went the other way on that. So if you said if your honors were to find that this actually fit within the malicious prosecution exception, you would be faced with that. And our position in that point is that the statute controls over the private agreement.  Ms. Chalupka. Chief Judge Smith, Judge Murphy, Judge Colleton, thank you for hearing argument in this case and happy Mardi Gras. My name is Maren Lynn Chalupka. This is my co-counsel, Bob Mullen, and we are here from Nebraska. We ask this court to affirm the judgment of the district court. If any part of a pleading arguably or potentially falls within the coverage of an insurance policy, the insurer must either seek a declaratory judgment on a duty to defend or else undertake the defense subject to a reservation of rights. If the insurer refuses to do one of those things and the case ends with a judgment against the insured, the insurer is bound by that judgment unless it can show fraud or collusion. The insurer cannot hide behind policy interpretations and it can't collaterally attack the judgment. The right to defend is not a free lunch. It's what the Nebraska Supreme Court held back in 1964 in the Metcalf case and it's still the law today. St. Paul ignored that rule. In May of 2010, St. Paul put all of its chips on the hope that some court somewhere would say that its SIR is going to save it and it left all of its chips on that hope even after door after door after door closed on the chance for its insured to protect itself and for it to protect itself. No later than May of 2010, St. Paul knew that David Kofod was named as an individual defendant. St. Paul knew that he'd been convicted of evidence tampering and St. Paul knew that Douglas County had quit paying for his counsel. But St. Paul sat by and watched as discovery proceeded to qualified immunity motions, to an appeal to this court, and then two more years of post-appeal discovery. They sat by and watched. Now in June of 2013, St. Paul knew that Douglas County was in negotiations and knew that those negotiations expressly reserved these plaintiffs' right to pursue coverage from St. Paul. And when the plaintiffs made good on that reservation by filing dispositive motions against Kofod, St. Paul knew about that too. And during all of that time, St. Paul did not seek a declaration of its rights. They could have fought for the exclusions that they now say they believe in. They could have fought for them. They knew they had these exclusions. They wrote about them in their letters, but they didn't go to court on it. They also didn't go to court to step in and defend Kofod under a reservation of rights. They gambled that their S.I.R. would allow them to do nothing. And when you look at what was going on in the record at that point, David Kofod was in prison, too broke to hire a lawyer, fight for coverage. St. Paul knew it was unlikely they were ever going to hear from him. And so every time that St. Paul had an opportunity to prevent all these issues from coming to this court in this posture, St. Paul just shrugged its shoulders. It assumed that it could do nothing and this court would bail it out. It assumed that St. Paul or that this court would treat St. Paul differently from an individual that sits on its rights. Assume that this court would save its bacon. Now, I want to get to the issues of intentional torts and whether these are excluded here. And where I'd go to directly is a case in our brief, Titan Indemnity versus Newton. And this is a case from the federal court in the Northern District of Alabama. And they had a beautiful holding there that said it would be a twist of the law to say that there is coverage for fabrication of evidence, but only if the fabrication does not break the law. Now, so it is in this case. There ain't no question that Kofod committed a crime. But Kofod not only committed the initial tampering of evidence in April of 2006, he then submitted his false evidence in support of prosecution. And he stood by that false evidence every day that the plaintiffs remained behind bars. On death eligible charges for another six months. Every day that he continued work on this investigation and that he remained deeply involved in it and did not correct his false evidence, he committed more violations of these plaintiff's civil rights. Now, there's a case that I've flurried this court with 28 J letters and there's still a case I forgot to include from the federal court from the District of South Dakota. American Justice Reciprocal versus Cates, C-A-T-E-S. The site's 1996 Westlaw 7-1-1-5-1-6. And I'll send another 28 J letter to put that in the record. In that case, a jailer was sued for violating the civil rights of a woman inmate via sexual harassment and sexual assault. The jailer was convicted of sexual contact without consent because he touched the inmate's breasts. And so the county's insurer tried to trigger its exclusion by saying it was a criminal act. Look, he's been convicted, it's criminal. And the court said that although part of the jailer's conduct did constitute a crime, other parts, quote, may also be found to be a violation of the inmate's civil rights. And thus they were covered under that policy. And that was a case, by the way, in which an insurer did something that St. Paul did not do in this case, which was file a deck relief action. So what did your complaint allege Kofo did in terms of his to justify liability? The direct actions attributed to Kofo to begin with the fabrication of evidence, planting the blood in my client, in Nick Sampson's brother's car. But we also allege that he was part of- Did anybody else participate with him in doing that? In, we allege that- In doing the evidence tampering. We also allege Douglas County Sheriff's Office to be involved with that, Your Honor. And because he did have the accompaniment of a crime scene technician that was with him at the scene. And we all, from there, he was the crime scene investigator for this investigation, but he was working in conjunction with the other defendants, Skank and Lambert. And one thing that was not mentioned before, and St. Paul may not know this because St. Paul wasn't involved, but shortly, it came up in the first appeal of this case, of this case to this court in the Livers v. Skank case, that three hours after he planted the blood in the car, David Kofod spent- I'm sorry, four hours after, David Kofod spent three hours with then-defendant investigator Lambert. And that meeting wasn't recorded. That meeting wasn't reported. There was no evidence of exactly what happened because both of them claimed that they didn't remember what happened at that meeting. But that was part of the first appeal. It wasn't as if he went by himself, planted the blood, and never told anyone about it. It also should be noted that David Kofod had been involved with this investigation from the beginning. He toured the crime scene on the first day and remained involved with this all the way through to the end. The day in which he went and planted the blood in the car was the day after Matthew Livers recanted his coerced confession. And the phone records showed that Lambert and Kofod had been in contact leading up to that time, from the time of the recantation of the confession up to where David Kofod went to that impound lot and planted the blood. He remained in... I'm sorry, Judge Paulson. Yeah, if I may just change the topic slightly. It might help me if you could explain whether you think the damages at issue here resulted from any criminal dishonest, fraudulent, or malicious act within the meaning of the policy. We believe that they resulted from a malicious prosecution, Your Honor. We believe the damages resulted from that. And as the other claims... It would help me if we could go through and address first the question I asked. And then if you want to talk about the exception, the exclusion, that would be fine too. But do you have a view on whether the injury or damage resulted from one of those four types of acts? The injury or damage resulted from the conspiracy to violate a civil right because it included the acts of all of the defendants acting in concert together. Some of those defendants... I'm just trying to find out if you take a position on whether it resulted from a criminal dishonest, fraudulent, or malicious act. I won't ask again if you don't have an answer. But the first two times, I'm still not sure whether you concede that it did and then say the exception applies or whether you say that for some reason there was not... that the injuries didn't result from those things. Let me give you a two-part answer that I hope directly answers that. Thank you. We're not denying that what David Kofo did constituted a crime. That's part one of the answer. The part two of the answer would be that no, I don't think it was the damages resulting from dishonest... Well, strike that. Strike that. The part two would be that yes, it probably falls into the dishonest part and the malicious part, but we have the carve-out from malicious prosecution. All right, that's helpful to me. So now let's go down to the exception. Sure. Was the injury caused by malicious prosecution within the meaning of the policy? Yes. Okay, and why is that? You heard what Mr. Benhart said about how there was no such claim pleaded. Well, I'm going to take issue with him because it's the facts that are well pleaded in a complaint and not the theory of the recovery or the label that's put on it that determines what the cause of action is. And it's really hard to pass the laugh test in a case like this with a claim that our clients were pleading something that was not... that did not amount to an unconstitutional malicious prosecution. How about the timing problem under Nebraska law? The charges had already been filed. The timing problem is not a timing problem. The arrest took place before... Well, to back it all up and go into the facts that were set forth in the Libers v. Skank case, the confession was coerced before the arrest for both... Well, for Mr. Libers, he was the one who confessed and Mr. Sampson was arrested then on that. The charges followed that. You're saying that if you look at the coerced confession, it came earlier. If you just look at the tampering, it came later. Correct. The coerced confession came before the charges were filed. And Mr. Kofod was involved in this investigation from the very beginning. What did he do before the charges were filed with respect to the coerced confession? Well, he ran the crime scene investigation at the Stoke House, at the scene of the murder. And I believe, and I hope I'm not... How did that relate to the coercion of the confession, his running of the crime scene? He was part of the investigation. His assignment in the investigation was running the crime scene investigation that began at the Stoke House and then moved on from there to the car that they seized, which was Nick Sampson's brother's car. And the first steps that were taken in this investigation were not necessarily part of a civil rights conspiracy. But as they focused in on Matthew Livers and his cousin, Nick Sampson, that's where the acts that were set forth in the Livers versus Skank opinion start to become clear. And the acts that took place before the arrest include the coercion of the confession from Matt Livers and the coercion of his incrimination of Nick Sampson. And from that point, they were arrested. Matt Livers then recanted his confession. And the next day is when David Kofod planted the blood. The timing of this... Just if I can get back to the exception, if I understand your position, you're saying that the facts that were pleaded would amount to a common law malicious prosecution claim, even though it wasn't pleaded that way? Two-part answer again. Common law malicious prosecution with the requisite federal add-on of saying that there was a deprivation of liberty, such as a seizure, because of the legal proceeding. That's part one. And part two is that my client did plead a malicious prosecution. And I understand now that St. Paul is quibbling with whether I had written out the elements in the right way. But if they're looking for the words malicious prosecution, they actually do appear in the Sampson complaint. You mean in the heading of the 1983 claim? Right. And as to Mr. Livers, he may not have used those terms. It's a due process claim, yeah. Yes, does it matter that it's not in the Livers complaint? I don't think it does, because once you look, I mean, we could call it malicious prosecution. We could call it, you know, a car crash. But what you label it is not what matters. What you label it is what the well-pleaded facts amount to. And in this case, as District Judge found out, the well-pleaded facts amounted to a malicious prosecution claim under 1983. Why is it that that's what matters as opposed to the the legal cause of action that caused the injury? Well, the pleading rules don't require that you put any kind of a title on your cause of action, actually. Well, all right. You're saying in a civil case, but I'm saying when the judgment was entered here, there wasn't a judgment for the tort of malicious prosecution, was there? Against David Kofod? Right. I'm not recalling as I'm seeing, I'm drawing, I'm vapor locking as I'm standing here, Judge Colleton. I don't believe that. There was a judgment on the 1983 claim for a due process violation, but it's debatable whether that's a malicious prosecution. All of that is something that St. Paul could have raised at the appropriate time had they entered these proceedings when they were supposed to, but they chose to sit back until they got garnished. Now is not the time to come here and ask a federal appellate court to do its work for it when the law said that you either have to get in under a ROR or else seek a debt relief action to make sure that you don't have to get in. What the district court found is that all of the facts that were pled and for that matter, the facts that were set out in this court's opinion in Livers v. Skank amount to exactly what was going on here, which is that two men who were innocent of murder were maliciously prosecuted in violation of their due process rights and they were seized in violation of their Fourth Amendment rights in order to get a conviction at any cost. And we can call it what we want or complain that the right words were not used. It is too late for St. Paul to come here and complain about the pleadings. There were plenty of other parties that could have made that complaint, by the way, in the Livers v. Skank appeal and that was not raised by any of them. In fact, there were other findings that came up in that case as well, such as what the district court noted, which is the fact that Douglas County admitted that David Kofold was acting in the course and scope of his employment. And that was a finding that came up in Livers v. Skank. It was noted in the March 30, 2016 decision, in this case, of the district court. And St. Paul hasn't explained why that is something that it wouldn't have dealt with either. This court had a decision in Gunderson v. Schluter in which it explained that malicious prosecution all by itself is, as you know, not punishable under 1983, but it can form the basis for that claim if it infringes some other provision of the Constitution or federal law, which in this case ended up, as was noted in Livers v. Skank, due process in the Fourth Amendment. I don't want to run out of time without talking about pre-judgment interest, Your Honors. And this was addressed in our cross-appeal. St. Paul owes pre-judgment interest from the time that the district court entered judgment against David Kofold, which is March 30, 2016. And this obligation comes from our pre-judgment interest statute in Nebraska, 45-103.02, which says that when a claim is liquidated, pre-judgment interest shall accrue from the date that the cause of action arose until the date of the judgment. Once the district court entered its judgment, there was no reasonable controversy as to either the plaintiff's right to recover that judgment or the amount of the recovery. The fact that St. Paul contested the garnishment does not create a reasonable controversy over the right to recover, and it certainly doesn't create a reasonable controversy over the amount. Now, St. Paul's collateral attacks on the judgment itself, such as the claims that the plaintiffs were making a double recovery in the punitive damage complaint, don't change the judgment into an unliquidated claim. The Nebraska Supreme Court has held that an action on a liquidated claim does not become unliquidated just because someone asserts an offset or some defense like that. We had given the court a case from the Nebraska Supreme Court called Ludeke versus United Fire and Casualty in our brief, and that was a case in which an insurer had sought a set-off for benefits from a worker's compensation policy that an insurer had received. The trial court allowed this set-off. The insurer appealed, and our Supreme Court reversed the set-off and, when they remanded the case, ordered the payment of prejudgment interest. And this is because in Nebraska, where the amount is clearly owed, an insurer can't use a collateral attack on the judgment to avoid liability for a prejudgment interest. Now, their $5 million has been at risk since the day of the judgments against Kofod, and that was four years ago next month. And they have, and there's a public policy that supports prejudgment interest. Well, that's if the whole $5 million were to somehow be awarded, right? That's the total amount that they could be on the hook for? The damages could have been something less than that, right? Well, the total amount of the coverage is $5 million. The total amount of the judgment was actually $6.6 million, but we acknowledge that this policy was $5 million, and so if you want to say that there was some controversy over the damages, that simply still is not, that's still not quite correct. You would calculate the prejudgment interest from the time of when? When would it begin? From the date that judgment was entered against Kofod, which would be March 30th of 2016. We're not asking for prejudgment interest going back all the way to the time of our client's arrest. It's going to the date that the claim became a liquidated claim, which was March 30th, 2016. On that date, on that date, the amount of money became clear, and under our statute 45, I'm going to come up with the right number on this, 45-104, when money due on an instrument in writing became clear. Now, prejudgment on an interest, prejudgment interest on that type of a liquidated claim is not determined by the offer of settlement provisions of that statute.  against Kofod, but once the money came due on an instrument in writing, then we had a prejudgment interest claim against St. Paul. I'm looking to see what else I need to cover in my remaining one minute and three seconds. If the court has no other questions, then I may give you the treat of one minute less of argument. Thank you, Your Honors. Thank you, Ms. Chalupka. Mr. Van Oort, your rebuttal. A refrain of counsel is that it was too late for us to make the arguments that we're making in this garnishment proceeding. She said the law required to either get in and defend or file a declaratory judgment saying there was no duty to defend. That is not correct in this case because we had no duty to defend. That's undisputed.  where it says we have no duty to defend, and we have no duty to defend. There is absolutely no legal basis to those arguments in this case. The cases that are controlling on this point from the Nebraska Supreme Court are R.W. versus Shrine and Torrison, both of whom we cited, which we cited in our briefs, and which say that where there is no duty to defend, the insurer is not bound by what happens in the previous default and can present its defenses and arguments in garnishment, which we are doing. It is timely. What I also heard counsel say in response to Judge Colleton's questions is that they agree and concede that the damages they're seeking here were caused by criminal, dishonest, and malicious conduct. That is correct. That is controlling for purposes of the public policy argument, regardless of what it is for the actual interpretation of the contract, which I'm going to get to. The statute that we've cited, Section 13-801, makes it clear that Nebraska has no interest in having its political subdivisions reimburse employees for conduct that is criminal, malicious, or dishonest. They don't want it paid for directly. They don't want it paid for through insurance. I thought the statute said illegal. Yes. Not criminal, malicious, or dishonest. You're right. I'm going further, but because counsel agrees that it was criminal, that falls within the illegal. You're right, Your Honor, that I am mixing up my policy and my statutory. I don't know whether she agreed it was all criminal. She agreed some of it was dishonest. But be that as it may, Your Honor, our view is, as I have explained, he was convicted of a crime here. That crime is at the center of all of the things, including the conspiracy, and it arises from that. What are examples of wrongful acts, injuries arising from wrongful acts that are covered, that are not malicious, dishonest? We've listed a great number of them in our brief. So false arrest. You can be convicted of false arrest. On the objective unreasonableness type? You can be proceeding in good faith, but be wrong. Excessive force. You can be, again, proceeding in the light of the moment, thinking that you're within the law, but be objectively wrong. False imprisonment is the same thing. Most of the civil rights violations are on an objectively reasonable standard, and therefore this coverage is not illusory in any way. The line is, there is a difference between intentional acts, which all of these involve some kind of intentional act of arrest and intentional wrongdoing. Malicious conduct. That's the line that the policy draws and it's well recognized. We go back. The mixed cases, I cited Rizzo, the other case on that same page is Cole. So in a situation like this, where there's a single injury, if COFED wanted to prove that he could be covered for part of this and not the other, that was his burden in this proceeding and he didn't meet it. What about the argument that your timing complaint about malicious prosecution fails because the confessions were coerced, I think she said, before the charges were filed. And I guess he was alleged and involved in a conspiracy that may have included that coercion. Yeah, following the argument. What do you say to that? I agree that the argument is that after the fact, he agreed to go back and basically ratify and be part of the things that he wasn't participating in. The standard in this circuit, if you're going to plead that kind of conspiracy, it's the Murray in reason over cases that we cited. You have to allege specific facts showing the state of mind that they actually reached agreement on that and going backwards in time is even harder than the ordinary elements of conspiracy. And there are no facts in this record, none showing that conversation, that agreement on there. What do we do with the fact that he defaulted on it? There was no need to prove it up. That is dispositive as between him and plaintiffs in the judgment. That is not dispositive as between him and us on coverage. He had the burden both places. He can fail at both places. What do you think he was required to do? He presents a default judgment that says in between those two parties, Cofed, I was found liable for conspiring. And what was he required to do here? Now he has to come and he has to show that he qualifies for coverage here. And if you agree that malicious, we agree that if he could do malicious prosecution here, what he would have to do is he would have to show that there were damages he was legally required to pay because he was found civilly liable for malicious prosecution based on a conspiracy. He's got to present evidence now that he did, in fact, reach an agreement to cover up coercion that happened before the charges were filed. Of course, he's not going to do that, but that's their burden on his behalf because it is settled that in a garnishment proceeding on behalf of an insured, the people seeking the judgment get no greater rights than the person insured under the policy. So, yes, that was their burden here. Now, you're basically saying they have to augment the default judgment with more evidence. Yes, well, they have to do that and they have to actually prove it up here against St. Paul in here, because as I said, we aren't bound by his default because we had no duty to be there, no duty to defend. This is his separate coverage dispute. He can lose both times. They will still have their judgment civilly against him. The question here is, did he have insurance for it? And our view on that is no, both under the policy and under Nebraska public policy because of the nature of what happened here. Thank you for the leeway. Thank you, Your Honors. Thank you, Mr. Van Oort. Thank you also, Ms. Chalupka. We thank both sides for your presence and the argument you've provided to the court, the briefing which you've submitted. We will take the case under advisement. Thank you.